FRANCISCO ESPERON
Self Representing, in *pro se*
P.I.I. Omitted per F.R.Crim.P. 49

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: __7/10/20__

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

UNITED STATES OF AMERICA,
              *Plaintiff,*

              v.

FRANCISCO ESPERON,
              *Defendant.*

------------------------------------------------------x

1:13-CR-630 (ALC)

**MOTION FOR EARLY**
**TERMINATION OF**
**SUPERVISED RELEASE**

    **NOW COMES** FRANCISCO ESPERON, motioning this Court *in propria*

*persona* (*pro se*) to terminate the imposed term of supervised release, reducing such to a

"time already served" duration. This request is made pursuant to title 18 United States

Code §3583(e) and Federal Rules of Criminal Procedure 32.1(c). Under the same rule of

criminal procedure, no hearing is requested in this matter.

## I.   CASE HISTORY

On February 24, 2015 I was sentenced to 53 months in prison after pleading guilty to one

count of Possession of Child Pornography, a violation of 18 U.S.C. §2252(a)(5)(B). Dkt.

No. 54. I was sentenced to 12 years of supervised release after my release from Bureau of

Prisons (BOP) custody.

    I was released from custody of the BOP to the jurisdiction of the United States

Probation Office here in New York City on April 7, 2017. I will have completed three years on supervised release around the date this motion is docketed.

I make this request after learning that statute, policy, and case law give this court the authority and encouragement to terminate cases like mine before their full term lapses.

## II.  JURISDICTION

This Court had and maintains jurisdiction of this case from pretrial, and now during my supervision phase.

## III. AUTHORITY

This Court is granted the authority to terminate a term of supervised release by 18 U.S.C. §3583(e)(1)  allows a district court judge to "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release after considering specific sentencing factors from §3553(a).

Pursuant to the provisions of the Federal Rules of Criminal Procedure a judge may grant early termination "… if it is satisfied that such action is warranted by the conduct of the defendant released and in the interests of justice." §3583(e)(1).

Paraphrased, the specific §3553(a) factors that are to be considered for an early termination request are: §§(a)(1): The nature and circumstances of the offense; §§(a)(2)(B): To afford deterrence to criminal conduct; §§(a)(2)(C): To protect the public from future crimes; §§(a)(2)(D): To provide education and job training, provide medical care

or other correctional treatment; §§(a)(4): The kinds of sentences available in the guidelines; §§(a)(5): In line with relevant policy; §§(a)(6): Avoiding unwarranted differences in sentence between similar defendants with similar conduct; and §§(a)(7): To provide restitution to any victims.

Conspicuously missing from this list is §§(a)(2)(A): "the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." Congress' omission of this sentencing factor means it did not intend supervised release to be part of the punishment phase of sentence, but serves other intentions. The clarity given by the sentencing commission in §5D1.2 is evidence of this, which cites rehabilitation completion as a valid reason for terminating a term of supervision early.

The applicable Federal Rule of Criminal Procedure is 32.1(c), which allows for modifications of supervised release. This rule requires a hearing unless the relief sought is favorable to the defendant and that an Assistant United States Attorney has received notice of the relief sought and is given reasonable opportunity to object (Fed R. Crim P (2)(B) & (C)).

Committee notes to this procedural rule don't spend much time on termination requests, but bring up a defendant's right to present mitigating information when a modification request would be of greater restriction to the defendant. In this case, I both waive the hearing, and request that a decision in this matter be made without such a hearing once the government is given an opportunity to proffer a written objection if it

chooses to do so.

## IV.  CONTROLLING PRECEDENT

"Early discharge or another form of modification is appropriate to 'account for new or unforeseen circumstances' not contemplated at the initial imposition of supervised release." *United States v. Rasco,* No. 88CR817 (CSH), 2000 WL 45438, at *2 (S.D.N.Y. Jan. 19, 2000) (quoting *United States v. Lussier,* 104 F.3d 32 (2nd Cir. 1997)). This "exceptional conduct" and "unforeseen circumstances" standard set by the *Lussier* Court, *id,* is often used to dissuade district courts from granting early termination of supervised release. Whatever conduct a defendant shows is rarely "exceptional" enough.

However, this standard has slowly started being replaced by U.S.S.G §5D1.2, which encourages Courts to terminate supervised release terms early for appropriate cases. See the policy discussion, below, for further discussion.

"The Supreme Court has described supervised release as "the decompression stage" between prison and full release." *United States v. Kappes,* 782 F.3d 828 (7th Cir. 2015) (Quoting *Johnson v. United States,* 529 U.S. 694, 709 (2000)). As will be seen below, this decompression stage, and the further need for supervision, no longer applies in my case.

## V.  POLICY

The Sentencing Commission's policy on early termination can be found in §5D1.2.  This policy here made a sharp change in 2011 when the amendments to the manual that year

Page 4

specifically changed this section to encourage early termination in appropriate cases, rather than in cases which show "unforeseen circumstances" or "exceptional behavior" as *Lussier* proscribes.

"The guidelines encourage … [courts] to exercise this authority in appropriate cases, particularly noting that a court may impose a longer term of supervised release on a defendant with a drug, alcohol or *other addiction*, but may then terminate the supervised release term early when a defendant successfully completes a treatment program, thereby reducing the risk to the public from further crimes of the defendant."[1] U.S.S.G. §5D1.2 cmt. n. 5 (Emphasis added; Internal quotations omitted).

Probationary policy in regards to recommending early termination in supervised release cases comes from Monograph 109[2]. In tandem with the Sentencing Guidelines Manual notes in §5D1.2, Probation Monograph 109 informs probation officers that they "should consider the suitability of early termination for offenders as soon as they are statutorily eligible."

When making this determination, the 9 general criteria for making a recommendation to the court for early termination are found in section §380.10(b):

(1) Stable community reintegration;
(2) Progressive strides toward supervision objectives and in compliance with all conditions of supervision;
(3) No aggravated role in the offense of conviction, particularly large drug or fraud offenses;

---

1  From "Primer: Supervised Release" (Office of General Counsel, United States Sentencing Commission; 2015). Available at: https://www.ussc.gov/sites/default/files/pdf/training/primers/2015_Primer_Supervised_Release.pdf
2  Guide to Judiciary Policy, Volume 8, Part E: Supervision of Federal Offenders (Monograph 109)

(4) No history of violence;

(5) No recent arrests or convictions;

(6) No recent evidence of alcohol or drug abuse;

(7) No recent psychiatric episodes;

(8) No identifiable risk to the safety of any identifiable victim; and,

(9) No identifiable risk to public safety based on the Risk Prediction Index."

Later in that same section it states that the failure to meet criteria listed should not automatically exclude an offender from further consideration (§§d). Whether or not I meet the criteria listed above does not guarantee my probation officer will recommend early release. However, I believe that it is important to ponder these policies in addition to the sentencing factors and case law that surround early termination request for a fuller picture of what suits the interests of justice.

## VI. ARGUMENT

The Supreme Court stated in *Johnson v. United States*, 529 U.S. 694, 709 (2000) described supervised release as the "decompression stage" of a judgment. See also *United States v. Kappes,* 782 F.3d 828 (7th Cir. 2015). It follows that if the transition or decompression from incarceration is complete, and there are no other goals of supervision (or special conditions of supervision) left to achieve, then the purpose of supervision has been exhausted and early termination is warranted. The interests of justice are served, by statutory definition and precedent, by early release here.

Regarding §3553(a)(2)(B) & (C), I am of low risk to re-offend. Not only am I committed to a life free of criminal conduct, prosecution, and incarceration, but there are

statistics beyond the USPO risk-assessment tool that points to this conclusion. Beyond criminal history categories, criminal-history points themselves are an excellent indicator of the risk of recidivism and re-arrest. A 2017 study published by the Sentencing Commission concludes, specifically, offenders with zero criminal history points and no prior contact with the criminal justice system, "there is an 11.7 percentage point difference [lower] in rearrest rates..." compared to a zero-point offender with prior contact with criminal justice Zero-point offenders show a much lower re-conviction rate (17.4%), almost 4x less likely than an offender with 15+ points (66.2%)[3] I was sentenced in Criminal History Category of I, placing me among offenders who have the lowest risk of recidivism.

Second, a veritable mountain of studies from the DOJ and academic criminologists, as well as treatment professionals, who have published statistics on the recidivism rate of sex offenders show that I am at exceptionally low risk to the community of re-offending. "Critics also question the basic empirical underpinnings of [sex offender registries], noting that contrary to the understanding of legislatures and courts (including the U.S. Supreme Court)[4] sex offenders do not recidivate at higher rates than offender subgroups."[5] The following are only three examples of a growing body of evidence which illustrates this point:

---

3   *The Past Predicts the Future: Criminal History and Recidivism of Federal Offenders* ; United States Sentencing Commission, 2017, available at [http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170309_Recidivism-CH.pdf]
4   *See* Ira M. Ellman & Tara Ellman, "*Frightening and High*": The Supreme Court's Crucial Mistake about Sex Crime Statistics, 30 Const. Comment. 495 (2015). Referencing *Smith v. Doe,* 538 U.S. 84.
5   Wayne Logan, *Reforming Registries*, Academy for Justice, *A Report on Scholarship and Criminal Justice Reform* (2017)

- In the DOJ's own study from 1994, a three-year review of released sex offenders showed a rate of re-offense in the sexual crime category at 5.3%.[6]
- Next, a 2012 from Connecticut shows rates of new convictions of arrested prior-sex-offenders at a staggeringly low 2.7% over 5 years.[7]
- Finally, from the Maine Statistical Analysis Center, USM Muskie School of Public Service, in 2010 shows released male offenders in Maine are re-convicted of new sex offenses at a rate of 3.8% in their first three years of freedom.[8]

The Sentencing Commission, reacting to studies like these, provided its report on possessors of child pornography to Congress in February of 2013,[9] wherein three primary factors in sentencing consideration are believed to be relevant to sentencing consideration[10]: 1) content of image collection; 2) engagement with other offenders in a "community" of exploitation and file trading, and; 3) history of sexual misconduct. I meet only one of these sentencing criteria because I was not convicted of any distribution offenses, nor do I have a history of sexual misconduct.[11]

When I was incarcerated I spent much of my time helping myself and others in the RDAP program, the 9-month long 500-hour residential drug program that incarcerated

---

6  Recidivism of Sex Offenders Released From Prison in 1994, (Dubrose, Langan, and Schmitt). Published by the U.S. Department of Justice, Bureau of Justice Statistics, available at: http://www.bjs.gov/content/pub/pdf/rsorp94.pdf
7  From Sex Offender Recidivism in Connecticut, a Study of 746 Male Offenders release from prison in 2005 – 5 year study. Available from the Connecticut Office of Policy & Management: http://www.ct.gov/opm/lib/opm/cjppd/cjresearch/recidivismstudy/sex_offender_recidivism_2012_final.pdf
8  "Sexual Assault Trends & Sex Offender Recidivism in Maine" 2010 from the study of 552 Male Offenders released from prison between 2004 and 2008. Available from USM at: http://muskie.usm.maine.edu/justiceresearch/Publications/Adult/Sexual_Assault_Trends_and_Sex_Offender_Re cidivism_in_Maine_2010.pdf
9  "Report to Congress: Federal Child Pornography Offenses" available at http://www.ussc.gov/news/congressional-testimony-and-reports/sex-offense-topics/report-congress-federal-child-pornography-offenses
10  Id at page 311
11  This policy speaks to satisfying §3553(a)(4) and (a)(5)

addicts can attend. I graduated from that program, and then acted as a "Big Brother" to the following class. After that class, I was nominated and named a senior guide to the classes going through RDAP next.

Senior Guides are the highest achievement one can have in the RDAP program, and it comes with heavy responsibility. We were responsible for the actions and participation of the participants in the program under our charge. If they violated the rules of the program or the prison, we were also held accountable for those violations.

I continued treatment after I was released and in the custody of a halfway house, through the TDAP aftercare program at Saint Marks in Manhattan. I attended and continued this aftercare program for about a year after leaving halfway house custody.

After my release from halfway house custody, and in tandem with my substance abuse recovery, I was also involved in sexual offender treatment. My therapist, Nicole Borger has been my continuous therapist throughout this process. However, the weekly treatment program also includes a weekly group therapy meeting. I do work outside of that program ("homework") each week and I have completed the coursework at this point. This isn't a program that one graduates from however, whether I complete the coursework or not, the Souther District of New York USPO does not have provisions for graduating sex offender treatment to my knowledge. I will continue to attend this treatment for as long as I am on supervised release.

Part of my supervision involves twice annual polygraph examinations.

Miss Borger, however, is actively encouraging me to make this request to the court because she believes I have achieved all I can achieve from treatment and have the tools I need to move on from this case. More than Miss Borger, however, is the Sentencing Commission's recognition of addiction rehabilitation being a marker for lower recidivism rates, and that being a good example of a defendant who is a good candidate for early release.

In my personal life, I have a great job working in Heating, Ventilation and Air Conditioning (HVAC) with the largest HVAC company in the Tri-State area. I started as a driver and the ownership team immediately recognized me (after my interview) as overqualified. However, it is difficult to find work as both a felon, and a registered sex offender. I now work in a different capacity: the company created a needed position for me, where I expedite and act as a liaison between the service installers and the warehouse.

I have no therapeutic, rehabilitative, housing, medical, or vocational needs that could be aided by more time on supervised release. §3553(a)(2)(D).

I had garnered much faith from my community in me before my incarceration. I was a first responder during the attacks on 9/11/2001, as a deck hand on Pier 11 (Wall Street) on the East River. On that day, I helped rescue people running and escaping the chaos of the attacks, and after that day, I escorted families of victims to identify remains. I was awarded a Medal of Service for Heroic and Humanitarian Acts by the U.S.

Transportation Department for my work in those days.

I feel deep remorse that my community works were so diminished by my acts resulting in this case. Since my release, I have volunteered with my company, packing containers to send down to Puerto Rico in the aftermath of Hurricane Maria, and other efforts after disaster. This cannot clean the stain on my reputation in the community caused by my actions in this case, but I hope it helps if only in a small way.

I have served three years on supervision. Although five years is the minimum term of supervised release for my charge by statute, district courts retain the authority to terminate supervised release before this time. I have served inside the acceptable range to complete the goals of supervision before the expiration of the 12 years I was given at sentencing. These ranges are policy in U.S.S.G. 5D1.2(a)(2). See §3553(a)(4) & (5).

To stay in line with sentencing decisions in similar cases with similar defendants, §3553(a)(6) addresses the need to avoid unwarranted disparities between cases with such similarities. In regards to my request here, other cases where early termination requests have been granted are of particular applicable. In the Southern District of New York case of *United States v. White,* (1:07-CR-00848-DC, NYSD 2015), defendant Justine White was released from supervision after completing 2-years of his 5 year term, after serving a 78-month sentence for Possession of Child Pornography.

In Judge Chin's concluding paragraph he states:

> "For someone like White – who is employed, who can and will consistently attend counseling, and who carries a low risk of

reoffending – further supervision does little to advance the interest
of justice or his rehabilitation. See 18 U.S.C. §§ 3553(a), 3583.”

Defendant White and I share many characteristics, and I believe the same

reasoning for his release applies to me.  District judges in other circuits are trending

toward this reasoning. See *United States v. Zachary M. Holbrook*, 3:09-CR-071 (S.D.

Ohio) Release Order ECF No. 39, *United States v. Walker*, 3:07-CR-30119-MJR, (S.D.

Illinois) Release Order ECF No. 64, *United States v. Miller*, No 2:11-CR-181 (W.D.

Pennsylvania) Release Order ECF No. 56.

A look at the Monograph 109 test for the USPO to consider recommendations on

requests for early termination of supervised release addresses many of the same issues

from §3553, but from an integration related standpoint.

I have met all achievable goals set out for me on supervision. I have remained

clean, sober, and an active participant in both substance abuse and sexual offender

treatment since long before I was released from prison. I have no violations of supervised

release, no arrests since release, no violent criminal history, and have passed all of my

polygraph examinations.

I have an extensive support network that encourages and helps my life post-

incarceration. I’ve been married for 21 years to Levette, and have two children. My

daughter, Brianna, is 26 and is a thriving young woman.

My son, Francisco, III is now twenty years old and lives with Levette and I. My

mother- and father-in-law are both retired NYPD and are fully supportive of my

relationship with Levette, my children, and my success.

I have support in therapy, in coworkers, in friends, and extended family all in the area who I can call on in tough times. This has never been as essential as it is now, as New York City is struggling daily to keep up with the dangers and demands of the COVID-19 pandemic. Levette teaches in public schools, and has been admirably adaptive to the changing needs of her job since the shelter-in-place orders of the city and State have shut down the school

I pose no risk of danger to any victims in my case and I am of no risk to public safety, although probation's Risk Prediction Index is not at my disposal to comment on this particular scoring method. I am considered essential, and continue to work through the state-wide shutdown.

I have a myriad of accomplishments since my release from BOP custody in work and in life. I was granted an "enhanced" driver's license that places my passport number on the reverse side, allowing me easy travel between the U.S., Mexico, and Canada. Although I cannot leverage the use of it freely just yet, it is important to me and my job later on to have. Although I am a felon, and a registered sex offender, this enhancement was given to me when it is withheld from many who apply for it. It is a small victory, for certain, but one that is meaningful to me.

I cannot undo the damage or harm that I've done to my family or my life through my own actions. I take responsibility for those actions. I ask that I be released from supervised release because I have completed the stated intentions of it and believe that

the interests of justice support this request.

### VII.      CONCLUSION

Based upon the reasons and factors discussed in this motion, I respectfully request

that this Court terminate the remainder of my term of supervised release.

Submitted on this _8TH_ day of _APRIL_ , 2020.




FRANCISCO ESPERON
Pro Se Defendant, Movant


### CERTIFICATE OF SERVICE

I, Defendant FRANCISCO ESPERON, aver with my above signature that I have served
the foregoing document upon the Clerk of the Court by conventional filing through
postage pre-paid mail with the United States Postal Service to: Clerk of the U.S. District
Court, Southern District of New York, 500 Pearl Street, First Floor, New York, New York,
10007.

Pursuant to ECF Rules 9.1 and 9.2, the government is considered noticed through
local rule 5(b) when such is entered by the Clerk onto the electronic docket. Service, is
therefore, compliant and completed upon the Clerk's scanning and docketed of this
motion.

The motion  is DENIED.
So Ordered.

7/10/20

Page 14